OPINION
Plaintiff-appellant, Michael Iberis ("appellant"), appeals from the grant of summary judgment in favor of defendants-appellees, Mahoning Valley Sanitary District ("District") and Matthew Blair.
On September 7, 1993, appellant and the Board of Directors for the District entered into a three-year employment contract whereby appellant was to be the District's Executive Director. Appellant had the option to extend the contract for an additional three years. The agreement could be terminated if appellant received a substandard evaluation for two consecutive years or if either party gave a thirty-day written notice of termination. Appellant was entitled to one-year severance pay if the District terminated the agreement. On June 17, 1996, appellant exercised his option to renew the contract for an additional three-year term. On November 25, 1996, the President of the Board of Directors, Matthew Blair, terminated appellant's employment. Appellant did not receive one year's severance pay.
On January 26, 1998, appellant filed suit in Mahoning County for breach of the employment contract. The case was removed to the United States District Court but dismissed, subject to the right to refile in state court. On February 9, 1999, the District filed a complaint for summary judgment against appellant in the Trumbull County Court of Common Pleas. The District asked the court to declare that appellant's employment contract violated R.C. 6115.72 because the contract was in contravention of the statutory provision that all sanitary district employees be at-will employees. Additionally, the District asked the court to declare that appellant was terminated for good cause.
On February 23, 1999, appellant filed a complaint against the District, Edward Flask, in his personal capacity and official capacity as a former member of the District's Board of Directors, and Matthew Blair, also in his personal capacity and official capacity as a member of the District's Board of Directors. Flask later was dismissed as a party. Appellant brought claims of wrongful termination for breach of the employment contract, wrongful discharge in violation of public policy for cooperating with an investigation into corrupt practices at the District, and for defamation. The defamation claim was predicated upon a letter Matthew Blair wrote, dated January 27, 1997, to Leo Paliapis, with the State Auditor's Office. Appellant maintained the letter contained numerous false and malicious accusations, which were published. The Mahoning County case was consolidated with the Trumbull County action. Venue of the consolidated cases was established in Trumbull County.
On November 15, 1999, the defendants filed a motion for summary judgment. The defendants argued appellant's employment contract was invalid because it violated the express dictates of R.C. 6115.72, which provides that all District employees are at-will. The defendants also challenged appellant's wrongful termination cause of action. They refuted appellant's claim that he was fired in retaliation for exposing corrupt practices and illegal retaliatory actions by the District's Directors against two employees. The defendants pointed out that appellant had not brought a "whistleblower" termination claim pursuant to R.C. 4113.52. They further contended that appellant did not adequately plead a claim for wrongful termination in violation of public policy. The defendants argued the letter sent by Matthew Blair to the auditor in charge of the special audit was not libelous because Blair was immune under R.C. Chapter 2744 and because the letter was privileged. The defendants stated that the Auditor's Office of the State of Ohio conducted a special audit to investigate alleged financial mismanagement at the District.
On January 2, 2000, appellant filed his response to the defendants' summary judgment motion. Appellant asserted R.C. 6115.72's purpose was to illustrate an exception to at-will employment, specifically that a director appointed by the advisory council of a district only could be removed for cause. Appellant further argued that parties could enter into subsidiary contractual relationships in at-will situations. Appellant contended that he did plead a clear public policy of being truthful with investigating officers, requiring him to cooperate with the audit and investigation of the District. Appellant maintained the defendants discharged him in violation of the whistleblower's statute, R.C.4113.52(A)(1)(a). Appellant asserted Blair's letter was not immune because of the exceptions to political subdivision immunity set forth in R.C. 2744.03. Further, appellant argues that if Blair was acting for the District, a resolution was required or his act was outside the scope of his employment. Appellant contended Blair acted with malicious purpose and in a reckless manner.
On February 22, 2000, the trial court granted the defendants' motion for summary judgment. Appellant has appealed from this ruling.
In his first assignment of error, appellant contends the trial court erred in finding that the employment contract was void because it violated R.C. 6115.72. Appellant submits that this statute merely illustrates an exception to the general rule that employment relationships are at-will. Appellant maintains R.C. 6115.72 provides that a director, appointed by the advisory council of the sanitary district, may be removed only for cause.
This case was decided by summary judgment. In accordance with Civ.R. 56, the evidence must be construed most strongly in favor of the non-moving party. Summary judgment should be granted only if no genuine issue of facts exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which is adverse to the non-moving party. Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64. A summary judgment motion first forces the moving party to inform the court of the basis of the motion and to identify portions in the record which demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280,296. If the moving party fails to satisfy its initial burden, the motion must be denied. If the moving party satisfies this initial burden, the nonmoving party must set forth specific facts showing there is a genuine issue for trial. Id. An appellate court reviews a trial court's ruling on a summary judgment motion de novo. Pennsylvania Lumbermens Ins. Corp.v. Landmark Elec. Inc. (1996), 110 Ohio App.3d 732, 743.
R.C. 6115.72 provides:
 "Any director, appraiser, member of the advisory council, or other officer or employee of any sanitary district may be removed for or without cause at any time by the authority appointing him, except that any director appointed by the advisory council of a district shall be removed only for cause."
 Appellant also relies upon R.C. 6115.14, which provides, inter alia, that the employment of an executive director must be evidenced by writing.
The parties dispute the application of the phrase "except that any director appointed by the advisory council of a district shall be removed only for cause." A perusal of R.C. Chapter 6115 shows that the terms "board of director" and "advisory council" are not used interchangeably. R.C. 6115.10 provides for the appointment of a board of directors. However, sanitary districts organized wholly for the reduction of populations of biting arthropods, pursuant to R.C. 6115.101, consist of a board of directors appointed by the advisory council of the district. An advisory council is appointed within thirty days after the court enters the decree incorporating the sanitary district of those districts organized wholly for the reduction of populations of biting arthropods. R.C. 6115.102. An advisory council also will be appointed with respect to sanitary districts organized wholly for the purpose of providing a water supply for domestic, municipal, and public use. This advisory council is to annually review the expenditures and operation of the board of directors. R.C. 6115.104. By the plain terms of R.C. Chapter 6115, the board of directors and the advisory council are not the same, having different purposes and responsibilities.
R.C. 6115.72 provides that a director appointed by the advisory council can be removed only for cause. Appellant was hired pursuant to R.C. 6115.14
by the board of directors of the district, not by an advisory council. The clause at issue found in R.C. 6115.72 does not apply to appellant because he was not appointed by an advisory council, but hired by the board of directors. Because the clause does not pertain to appellant, the District had the exclusive authority to hire and fire its employees, including its executive director. See Van Auker v. Mahoning ValleySanitary Dist. (Apr. 18, 1979), Mahoning App. No. 78 CA 147, unreported, 1979 Ohio App. LEXIS 8577.
Although R.C. 6115.14 does require that the employment of an executive director be evidenced by a written agreement, this does not obviate the provision in R.C. 6115.72 that an employee is at-will. Appellant's contract with the District provided that the agreement may be terminated if appellant received a substandard evaluation for two consecutive years or by either party following written notice. However, if the District terminated the agreement, appellant would be entitled to one year of severance pay. The District contends these terms are contrary to R.C.6115.72.
Courts must strictly construe specific statutory provisions designed by the legislature to safeguard public funds. Cleveland Trinidad Paving Co.v. Bd. of Cty. Commrs. of Cuyahoga Cty. (1984), 15 Ohio App.3d 66, 69. A valid contract cannot be made which is contrary to statute. Martin v.Midwestern Group Ins. Co. (1994), 70 Ohio St.3d 478, 480. Contracts made in violation or disregard of statutes are void and courts generally will not lend their aid in enforcing such contracts, directly or indirectly, but will leave the parties where they have placed themselves. SeeBuchanan Bridge Co. v. Campbell (1899), 60 Ohio St. 406, syllabus; KraftConst. Co. v. Cuyahoga Cty. Bd. of Commrs. (1998), 128 Ohio App.3d 33,44. A party entering into a contract with a governmental agency must ascertain whether the contract complies with the Constitution, statutes, charters, and ordinances as far as they are applicable or that party will perform at his peril. Lathrop Co. v. Toledo (1966), 5 Ohio St.2d 165,173.
Appellant and the District were prohibited from entering into a contract that contradicted the terms of R.C. 6115.72. However, R.C. 6115.14
provides that a board of directors may hire an executive director, with the terms of the employment contract in writing. This written employment contract between the parties still must comply with other statutory provisions. Appellant clearly was an at-will employee. The clause in the contract, regarding the requirement that he could be terminated after receiving substandard evaluations for two consecutive years, was void and without effect. Even so, the parties could include provisions for severance pay following appellant's dismissal by the District without violating R.C. 6115.72. Such a clause in a written employment contract would not change the employee's at-will status as the employee could be dismissed at any time by the District. However, the parties could agree that, in the event of the employee's termination by the District, the employee would receive compensation. Therefore, appellant is entitled to receive one year of severance pay. The trial court did not err by granting summary judgment on the issue of appellant's at-will status, but did err by granting summary judgment on appellant's claim for severance pay. Appellant's first assignment of error is overruled in part and granted in part.
Appellant's second assignment of error challenges the trial court's ruling granting the District's summary judgment motion on his wrongful discharge claim. Appellant asserts he demonstrated the elements of a claim for wrongful discharge in violation of public policy. Appellant argues the clarity and jeopardy elements of a wrongful discharge claim under Greeley v. Miami Valley Maintenance Contractors, Inc. (1990),49 Ohio St.3d 228, were demonstrated by the pleadings and evidence to a degree sufficient to withstand a summary judgment motion. Appellant maintains it was necessary that he cooperate with the audit and investigation of the District, or he may have been subject to criminal charges. Appellant contends the clear public policy is found within Ohio's Revised Code, requiring him to truthfully respond to the audit and not obstruct official business.
"The elements of a Greeley claim are as follows:
 "1. [A] clear public policy existed and was manifested in a state or federal constitution, statute, or administrative regulation, or in the common law (the clarity element).
 "2. [D]ismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
 "3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
 "4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element)."
 Painter v. Graley (1994), 70 Ohio St.3d 377, 384. A court considers only the clarity and jeopardy elements when questions of fact are not at issue. The causation and overriding justification elements are questions of fact for the trier of fact. Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134. This court reviews questions of law de novo. Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108.
A clear public policy is not limited to public policy expressed in statutory enactments; rather, it also may be based upon other sources such as the United States and Ohio Constitutions, administrative rules and regulations, and the common law. Painter, supra, at paragraph three of the syllabus. Ohio has a clear public policy in favor of reporting crimes. The dismissal of an employee for reporting possible criminal conduct of another employee while at work would jeopardize that public policy. Bailey v. Priyanka Inc. (Oct. 10, 2001), Summit App. No. 20437, unreported, 2001 Ohio App. LEXIS 4558.
Appellant's complaint alleged he was discharged because he cooperated with an investigation into the corrupt practices at the District and because he opposed illegal retaliatory actions by the District against two employees. Appellant also claimed his discharge was motivated by his truthful deposition testimony supporting the lawsuit brought by those two former employees. The defendants' summary judgment motion argued appellant did not plead a whistleblower termination claim pursuant to R.C. 4113.52, but that he was attempting to bring a Greeley claim. The defendants asserted appellant's complaint was fatally defective because he did not articulate the clear public policy at issue. The defendants relied upon the holding in Painter that a plaintiff must allege facts demonstrating his termination contravened a clear public policy. The defendants did not address any of the factual allegations raised in appellant's complaint regarding the motivation for his termination but relied solely upon their contention that the complaint was defective for not stating which clear public policy was at issue.
We do not read the holding of Painter as narrowly as the defendants.Painter does require that the plaintiff allege facts showing the wrongful termination violated a clear public policy. A review of appellant's complaint shows he did so. Because the public policy may be ascertained from a variety of sources, the employee does not have to succinctly articulate the public policy at issue as long as the court can infer such from the pleadings. Here, it is apparent appellant was alleging he was terminated for cooperating in a criminal investigation and for aiding the two former employees in their suit against the defendants. The public policy at issue may be inferred from these facts. The defendants did not advance any further argument in support of their summary judgment motion except for their contention that the complaint was fatally flawed nor did they submit any evidence on this issue. Therefore, the trial court erred by granting summary judgment on this cause of action.
Appellant also refutes any argument that the whistleblower's statute preempts a Greeley claim. A review of the defendants' motion for summary judgment shows they only asserted appellant had not brought a whistleblower's claim, not that his Greeley claim was preempted. An employee is entitled to maintain a Greeley claim against his employer, whether or not he complies with the whistleblower's statute, if he can identify a source of public policy separate from the public policy embodied in R.C. 4113.52. Doody v. Centerior Energy Corp. (2000),137 Ohio App.3d 673 . This issue was not before the trial court, as the defendants did not advance this argument below. Appellant's second assignment of error has merit.
In his third assignment of error, appellant asserts the trial court erred by granting the defendants' summary judgment motion on the defamation claim. Appellant contends the letter sent by defendant Blair to the auditor constituted defamation, for which the defendants are not immune under R.C. Chapter 2744.
The elements of a common-law defamation claim are: (1) a false and defamatory statement concerning another; (2) an unprivileged publication of the statement to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Akron-Canton Waste Oil, Inc. v.Safety-Kleen Oil Serv., Inc. (1992), 81 Ohio App.3d 591, 601. A qualified privilege has been recognized in Ohio for public officials who make statements on matters of public concern. Floyd v. Thomas (June 26, 2000), Preble App. No. CA99-07-016, unreported, 2000 Ohio App. LEXIS 2760. A public official's wrongful act, even if it is unnecessary, unjustified, excessive, or improper, does not automatically take the act manifestly outside the scope of employment. See Jackson v. McDonald (June 18, 2001), Stark App. No. 2000CA00363, unreported, 2001 Ohio App. LEXIS 2789. A qualified privilege can be overcome by a showing that publication was made with "actual malice," that is with knowledge that the statement was false or with reckless disregard for whether it was false or not.Hahn v. Kotten (1975), 43 Ohio St.2d 237, at paragraph two of the syllabus.
R.C. 2744.02(A)(1) generally insulates political subdivisions from liability "allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." This immunity is limited by R.C. 2744.02(B), which sets forth the circumstances under which a political subdivision may be held liable for the acts or omissions in connection with its governmental or proprietary functions. Employees of the political subdivision also generally are immune from personal liability. However, R.C. 2744.03(A)(6) provides an employee may be held personally liable if his acts or omissions were manifestly outside the scope of his employment or official responsibilities; his acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or liability is expressly imposed upon the employee by a section of the Revised Code. Although wanton misconduct normally is a jury question, the standard of showing wanton misconduct is high. Where the evidence in the record does not suggest a material fact issue on the question of reckless or willful or wanton misconduct, a trial court may properly determine the case by means of summary judgment. Garrison v.Bobbitt (1999), 134 Ohio App.3d 373.
In LRL Properties v. Portage Metro. Housing Authority (Dec. 17, 1999), Portage App. No. 98-P-0070, unreported, 1999 Ohio App. LEXIS 6130, this court held that a claim of defamation was an intentional tort, entitling a political subdivision to immunity as set forth in R.C. Chapter 2744. Therefore, defendant District is immune from liability.
An employee of a political subdivision also is immune from tort liability unless the plaintiff can establish the employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Id. Wanton misconduct is a failure to exercise any care whatsoever. Hawkinsv. Ivy (1977), 50 Ohio St.2d 114, syllabus. To act in reckless disregard of the safety of others, the conduct must be of such risk that it is substantially greater than that which is necessary to make the conduct negligent. Thompson v. McNeill (1990), 53 Ohio St.3d 102, at paragraph one of the syllabus. Bad faith has been defined as a "dishonest purpose, moral obliquity, conscious wrong doing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud."Jackson v. Butler Cty. Bd. of Cty. Commrs. (1991), 76 Ohio App.3d 448,454. Malice is a willful and intentional design to do injury. Id. at 453.
Appellant first asserts Blair acted outside the scope of his employment in writing the letter because he did so without a resolution by the Board. R.C. 6115.13 provides, inter alia, that all actions by the Board shall be by resolution. Appellant's reading of this statute is too narrow. If every communication by the Board had to be by resolution, paralysis would result. The actions contemplated by the statute encompass an act greater than mere letter writing.
Appellant next contends a jury could find Blair's actions were done with malicious purpose, in bad faith, or in a wanton or reckless manner. Appellant supports this argument by references to Blair's deposition. At oral argument, both parties agreed Blair's deposition was before the trial court. However, the deposition is not part of the record before this court. Because the deposition is not part of the appellate record, these arguments must be disregarded by this court. The deposition apparently is the only evidence, aside from the letter itself, demonstrating malice or ill-will on Blair's part. The letter itself is insufficient to show malice or ill-will. Based on the record before this court, there is insufficient evidence to overcome Blair's assertion of immunity.
Merely because an employee is sued in his personal capacity does not shield the plaintiff from providing evidence negating the application of immunity. See Bays v. Northwestern Local School Dist. (July 21, 1999), Wayne App. No. 98CA0027, unreported, 1999 Ohio App. LEXIS 3343. That appellant also sued Blair in his personal capacity does not alter the analysis applied above. Blair claimed a qualified immunity based upon R.C. Chapter 2744. Appellant did not meet his burden in opposing the defendants' summary judgment motion to refute the assertion of immunity. The trial court did not err by granting defendants summary judgment on appellant's defamation clause of action. Appellant's third assignment of error is not well-taken. The judgment of the Trumbull County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
O'NEILL, P.J., CHRISTLEY, J., concur.